**John W. CUMMING, Petitioner,**

v.

**DISTRICT UNEMPLOYMENT COMPENSATION BOARD, Respondent.**

No. 11831.

District of Columbia Court of Appeals.

Submitted Oct. 6, 1977.

Decided Jan. 13, 1978.

John W. Cumming, pro se.

Russell L. Carter, Bill L. Smith, Robert J. Hallock, Washington, D. C. and Earl S. Vass, Jr., Richmond, Va., were on the brief for respondent.

Before NEWMAN, Chief Judge, and NEBEKER and YEAGLEY, Associate Judges.

NEWMAN, Chief Judge:

Petitioner's application for benefits under the District of Columbia Unemployment Compensation Act[1] was denied by order of the District of Columbia Unemployment Compensation Board (hereinafter "the Board"). He seeks review contending that the Board erred in denying him benefits based on its finding that he was not "unemployed" within the meaning of § 1(e) of the Act.[2] We agree with petitioner and reverse.

Having been employed as a law clerk at a law firm in the District of Columbia while attending law school, petitioner voluntarily left that employment in August, 1975 and moved to Eureka, California.[3] From October, 1975 until his involuntary termination on May 15, 1976, he was employed with a legal services program on a full-time basis. On May 17, 1976, petitioner filed an interstate claim[4] in California for unemployment compensation based upon his prior employment in the District. On this same date petitioner entered into an arrangement with a California firm under which he was to provide assistance in the preparation of a lawsuit which that firm had undertaken on a contingency fee agreement. Petitioner's remuneration was likewise contingent on the firm receiving the contingent fee. It was agreed between petitioner and the firm that petitioner would continue to seek full-time employment elsewhere and would terminate his assistance upon his finding such employment. Petitioner's work-time was allocated so that he could actively pursue other employment possibilities. It appears in the record that petitioner contacted a number of law firms and legal services programs in the Eureka, California area and filed the requisite reports to that effect. It was petitioner's view that by assisting the law firm on a temporary basis he could acquire valuable experience and, by not remaining idle, increase the potential for gaining the type of employment he sought.

Although initially found eligible for unemployment benefits[5] petitioner was subsequently held ineligible for benefits for the period May 16, 1976, to July 24, 1976, because he was "not unemployed" within the meaning of the Act.[6]

The Board's decision (adopting the decision of the Appeals Examiner) made no specific findings of fact concerning the particulars of petitioner's employment from May 17, 1976, to July 24, 1976, e. g., hours worked, nature of work, amount and nature of remuneration. Instead, the Board concluded that, "based on the available record, testimony of the claimant and his witness [a partner in the law firm which had engaged petitioner's services], the Examiner finds that the claimant was in fact an independent contractor in his relationship with the law firm. As the claimant was in fact an independent contractor, the hours worked and the manner which the claimant was to be compensated for his services are irrele-

1. D.C.Code 1973, § 46–301 et seq. (hereinafter "the Act").

2. D.C.Code 1973, § 46–301(e): "An individual shall be deemed 'unemployed' with respect to any week during which he performs no services and with respect to which no earnings are payable to him, or with respect to any week of less than full-time work if the earnings payable to him with respect to such week are less than his weekly benefit amount."

3. Pursuant to D.C.Code 1973, § 46–310(a) voluntary departure from employment serves merely to postpone, not preclude, a claimant's eligibility for benefits under the Act.

4. D.C.Code 1973, § 46–316.

5. Brief for Petitioner, Appendix A (District Unemployment Compensation Board, Notice of Monetary Determination).

6. It is conceded that petitioner received no income during the referable period, although he did, in fact, receive payment later. He properly concedes that these payments must be deducted from any benefits under the Act.

vant for the purpose of unemployment compensation." The Board concluded that the question of full-time versus part-time work was not relevant to eligibility where one was an independent contractor. Likewise, the Board held the fact that no remuneration was actually received to be without legal significance since there existed the "potential for compensation."

Petitioner does not dispute the conclusion that in regard to his employment with the California law firm he was in an independent contractor status. Hence we need not address ourselves to that issue. The thrust of petitioner's argument is, instead, that so long as he was otherwise able to meet the eligibility requirements set forth in D.C. Code 1973, § 46–309,[7] and did not fall within the disqualifying provisions of D.C.Code 1973, § 46–310, his status as an independent contractor, i. e., a self-employed person, does not erect a *per se* disqualification from benefits.

The Board's position, on the other hand, is summarized in its conclusion that "self-employment and unemployment are contradictory terms." As a self-employed individual, the argument goes, petitioner takes upon himself the risk that his "employment" may result in little or no remuneration. In support of its position the Board relies not on any specific statutory language[8] but on several cases from other jurisdictions and on two policy arguments. The policy arguments are as follows: (1) it is inequitable to tax employers for benefits while a former employee engages in a self-controlled enterprise; and (2) the Board has no ability to police against overpayments to a self-employed individual as they do in the case of an individual employed by others.

The issue of statutory construction raised herein constitutes one of first impression in this jurisdiction. We are cognizant of the fact that by its delegation of administrative authority to the Board, D.C. Code 1973, § 46–313, Congress has constituted that body as the primary interpreters of the Act and that, as a consequence, we should give deference to the construction placed on the statute by the Board. *See Brooks v. NLRB*, 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125 (1954). Nonetheless, we may not abdicate to the Board our ultimate responsibility to provide authoritative statutory construction so as to ensure that the Board's determination to exclude an entire category of potential claimants (effectively a determination of unemployment compensation policy analogous to a legislative classification) comports with the legislative intent as expressed in the statute itself. *American Ship Building Co. v. NLRB*, 380 U.S. 300, 85 S.Ct. 955, 13 L.Ed.2d 855 (1965). The review provisions of the District of Columbia Administrative Procedure Act, D.C.Code 1977 Supp., § 1–1510(1), which establishes the scope of our review of Board decisions, D.C.Code 1977 Supp., § 46–312, provides that this court has the power "so far as necessary to decision and where presented . . . to interpret constitutional and statutory provisions . . . ." Thus, we first turn our attention to the Act itself to determine whether its terms allow for the construction advanced by the Appeals Examiner and adopted by the Board. We conclude that they do not.

Focusing first upon the eligibility section of the Act, D.C.Code 1973, § 46–309, we find in the prefatory paragraph that only an "unemployed individual" can be "found eligible" for compensation. The definition

---

7. Subsection (d) of § 46–309 establishes the requirement that to be eligible for benefits one must be "available for work." This provision has been construed to mean that a claimant must exhibit a "genuine attachment to the labor market" and that he has "undertaken an active search for work." *Woodward & Lothrop v. District of Columbia Unemployment Compensation Board*, 129 U.S.App.D.C. 155, 158, 392 F.2d 479, 482–83 (1968); *National Geographic Society v. District Unemployment*

*Board*, 141 U.S.App.D.C. 313, 321, 438 F.2d 154, 162 (1970). The Board's decision concluded that petitioner's status as an independent contractor, in and of itself, precluded his ability to meet this requirement.

8. Nor could it, for nowhere in the statutory scheme is there established a *per se* disqualification of self-employed claimants from statutory benefits.

of "unemployed" is set out in D.C.Code 1973, § 46–301(e)[9] and includes within its purview two categories of persons: (1) those who, with respect to any week for which benefits are claimed performs no services and has no "earnings" payable; and (2) those who have engaged in less than full-time work if the "earnings" payable for the week are less than the weekly benefit amount. This definition first appeared in the Act as a result of an amendment in 1940,[10] which significantly changed the original statutory provision. As constituted in the original enactment the statute read as follows:

> The phrase "totally unemployed" means that the individual concerned has performed in the particular week no services whatsoever for which remuneration (of any nature whatsoever) is payable, *has not engaged in any self-employment*, and is found by the Board to have been unable to engage in any self-employment in which he was formerly engaged.[11] [Emphasis supplied.]

The Act also defined "partially unemployed" as one who fails "to earn in the particular week remuneration (of any nature whatsoever) of at least $2 more than the benefit he would be entitled to receive under this chapter with respect to such week if totally unemployed and otherwise eligible".[12]

Thus, the 1940 amendments effected several important changes. They combined the definitions of "totally unemployed" and "partially unemployed" into the concept

"unemployed." Significantly, the new definition eliminated any reference to self-employment as an element of the definition and, therefore, as a factor in determining whether one occupied an "unemployed" status. Instead, an individual's status was made to turn upon two elements: (1) the amount of work or services performed in the referable week; and (2) the amount of "earnings" payable for such work or services. The Act then set out a definition of "earnings":

> "Earnings" means all remuneration payable for personal services, including wages, commissions and bonuses, and the cash value of all remuneration payable in any medium other than cash whether received from employment, *self-employment*, or any other work. . . .[13] [Emphasis supplied.]

██ Thus, the only reference to self-employment in the present Act is that the earnings derived from such endeavors are to be treated in a manner identical to all other earnings, *i. e.*, they serve only to decrease the amount of benefits for which one is potentially eligible. When viewed in light of the fact that Congress, in these same amendments, removed its proscription against self-employment from the definition of an unemployed individual, we find strong evidence that Congress did not intend for self-employment to erect a barrier to an individual's eligibility for unemployment benefits.[14]

---

9. *Supra* note 2.

10. Act of July 2, 1940, ch. 524, § 1, 54 Stat. 730. The wording of the present statute reflects subsequent changes that came about as a result of an amendment in 1943, Act of June 4, 1943, ch. 117, 57 Stat. 100, but the later changes are not material to our consideration of the issue herein.

11. Act of August 28, 1935, ch. 794, § 1(e), 49 Stat. 946.

12. *Id.,* § 1(f).

13. Act of July 2, 1940, ch. 524, § 1(f), 54 Stat. 730 (codified at D.C.Code 1973, § 46–301(d)).

14. We have examined the legislative history of the referable amendments but have found no comment explicating the congressional intent in this regard. However, in light of the relative clarity of these changes we do not find this absence of comment to be of significance.

Congress's explicit mandate to consider "earnings" from self-employment in calculating the amount of benefits due an individual who has engaged in some work during the week for which benefits are claimed disposes of the Board's argument that a "self-employed" individual ought be denied benefits because the Board is unable to account for such earnings. The Board cannot, by adjudication or rule-making, undertake to amend the statutory provision.

Other considerations also point toward this conclusion. As regards the wording of the statute itself, Congress established a number of "disqualifications." [15] Nowhere does the statute undertake to disqualify an individual who otherwise meets the eligibility requirements because he has undertaken to mitigate the consequences of his unemployment by engaging in "self-employment." Indeed, the policy of the Act has been held to point in precisely the opposite direction. *See District Unemployment Compensation Board v. William Hahn & Co.,* 130 U.S.App.D.C. 254, 257, 399 F.2d 987, 990 (1968). ("A very basic policy underlying the Unemployment Compensation Act is the preference for compensation through employment rather than welfare compensation".) Were we to construe the statute in the manner suggested by the Board, we would place an unemployed individual who is unable to secure employment from a third-party in the position of having to remain completely idle or else entirely forego his claim. Clearly it is not the purpose of the Act to provide a disincentive to work although this would likely result from the construction placed on it by the Board.

 Additionally, the Act itself, in its eligibility provisions, provides a safeguard against the risk suggested by the Board in its brief, that an individual, purportedly unemployed, will utilize statutory benefits to subsidize the formative stages of a new enterprise. To be eligible for benefits under the Act a claimant must demonstrate, *inter alia,* "that he is available for work and has registered and inquired for work at the employment office designated by the Board, with such frequency and in such manner as the Council of the District of Columbia may by regulation prescribe . . . ." [16] Compliance with this requirement, or with the other eligibility requirements, cannot be presumed by the Board. The burden is upon the claimant to adduce sufficient evidence of his eligibility.[17] In regard to the specific provision set out in 46–309(d), he must demonstrate a "genuine attachment to the labor market." A determination by the Board of eligibility must be supported by evidence in the record and set forth in specific findings,[18] and such findings were susceptible to challenge not only by the claimant but also by other interested parties, most particularly the "base period employer." D.C.Code 1973, § 46–303(c)(2). Even when an initial determination of eligibility has been made and is challenged by the contributing employer, the burden remains upon the claimant to adduce evidence that he has been "available for work" and conducted "an active search for work", *i. e.,* has exhibited a "genuine attachment to the labor market." *Woodward & Lothrop, Inc. v. District Unemployment Compensation Board,* 129 U.S.App.D.C. 155, 159, 392 F.2d 479, 483.

The Board has cited us to decisions in other jurisdictions which have denied benefits to individuals who have engaged in self-employment during periods of ostensible unemployment. We have reviewed these cases and find them unpersuasive in light of our Act and its history.[19] On the

---

**15.** D.C.Code 1973, § 46–310.

**16.** D.C.Code 1973, § 46–309(d).

**17.** *See District Unemployment Compensation Board v. William Hahn & Co., supra; Woodward & Lothrop, Inc. v. District of Columbia Unemployment Compensation Board, supra.*

**18.** *See Hill v. District of Columbia Unemployment Compensation Board,* D.C.App., 279 A.2d 501 (1971); *National Geographic Society v. District Unemployment Compensation Board, supra.*

**19.** The Board appears to place primary reliance on three Pennsylvania cases decided in the 1950's: *Gheder v. Unemployment Compensa-* *tion Board of Review,* 186 Pa.Super. 493, 142 A.2d 355 (1955); *Barlow v. Unemployment Compensation Board of Review,* 178 Pa.Super. 278, 115 A.2d 883 (1955); *Muchant v. Unemployment Compensation Board of Review,* 175 Pa.Super. 85, 103 A.2d 438 (1954). In light of the fact that the statute under which those cases were decided, 43 P.S. § 753(u), provided for benefits only where the claimant performed *no* services and received *no* remuneration, we find those cases inapposite. We take note of the fact that Pennsylvania subsequently undertook to amend its statute to provide for coverage to some persons engaged in self-employment; *see Department of Labor and Industry v. Unemployment Compensation Board of Review,* 203 Pa.Super. 183, 199 A.2d 474 (1964),

other hand, we find support for our decision in several of the cases cited to us by petitioner. For example, in *Bolles v. Appeal Board of the Michigan Employment Security Commission*, 361 Mich. 378, 105 N.W.2d 192 (1960) (en banc), the Supreme Court of Michigan rejected the "cliché" that "one who is self-employed is not unemployed", *id.* at 193, 194–95, opting instead for the "genuinely attached to the labor market" test.[20] *Accord, Corwin v. Sunshine Mining Co.*, 96 Idaho 211, 525 P.2d 993 (Sup.Ct. 1974)[21]; *Bartel v. Employment Security Department*, 60 Wash.2d 709, 375 P.2d 154 (Sup.Ct.1962); *Johnson v. Board of Review of Industrial Commission*, 7 Utah 2d 113, 320 P.2d 315 (Sup.Ct.1958). *See Carlsen v. California Unemployment Insurance Appeal Board*, 64 Cal.App.3d 577, 134 Cal.Rptr. 581 (Dist.Ct.App.1977). *Cf. Worthington v. California Unemployment Insurance Board*, 64 Cal.App.3d 384, 134 Cal.Rptr. 507 (Dist.Ct. App.1977).

■ In conclusion, we decline to accept the Board's construction of the Act and reiterate that the principal test for eligibility in this jurisdiction is "genuine attachment to the labor market," a test which necessitates a careful examination of the factual circumstances presented by the claimant. *See Doherty v. District of Columbia Unemployment Compensation Board*, D.C.App., 283 A.2d 206 (1971). While petitioner has presented evidence on this issue in support of his claim the Appeals Examiner and the Board did not make the requisite findings in light of their erroneous statutory interpretation. We therefore vacate the Board's decision and re-

mand for findings on the issue of genuine attachment to the labor market.

*So ordered.*

---

in recognition of the fact "that the Unemployment Compensation Law created a gross inequity against some partially self-employed individuals as against individuals who performed the same services for wages while in the employ of another." *Id.* at 476–77.

**20.** In arriving at its decision the Michigan court relied in part on the fact that its statutory scheme disqualified from benefits any person who "failed . . . to return to his customary self-employment, if any, when so directed by the employment office or the commission," *id.* at 195 n. 10, as evidence that self-employ-

ment was not intended to disqualify a claimant. While there is no similar provision in our Act, we derive similar evidence of legislative intent in the fact that "earnings", as defined by D.C. Code 1973, § 46–301(d), includes remuneration from "self-employment."

**21.** In *Corwin* the Idaho court distinguishes *Hatch v. Employment Security Agency*, 79 Idaho 246, 313 P.2d 1067 (Sup.Ct.1957), relied upon by the Board, on grounds that the claimant in *Hatch* was fully employed.